T. Edward Cundick (#10451)
tcundick@wnlaw.com
WORKMAN NYDEGGER
60 East South Temple Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 533-9800
Facsimile: (801) 328-1707

Putative attorneys for Jill's Office, LLC, Debtor-in-Possession

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF UTAH
Central Division

| | |
|---|---|
| In re<br><br>JILL'S OFFICE, LLC,<br><br>Debtor. | Bankruptcy Case No. 25-21625<br><br>(Chapter 11 (Sub. V))<br><br>Honorable Peggy Hunt<br><br>[Filed Electronically] |

### MOTION FOR INTERIM AND FINAL APPROVAL TO USE CASH COLLATERAL

Jill's Office, LLC (the **"Debtor"**), debtor-in-possession in the above-referenced case, hereby seeks interim and final court approval to use cash collateral as set forth in the budget herein, and to grant replacement liens the Debtor's post-petition accounts as adequate protection to the senior secured creditor. If approved, the Debtor intends to use cash through June 30, 2025 pursuant to the budget below, and grant the Small Business Administration or other creditors a replacement lien in post-petition cash and receivables, to the extent its lien position diminishes between March 27, 2025 and the date of plan confirmation. In support of this motion, the Debtor would show as follows.

1

**I.        Summary of Relief Requested.**

The Debtor seeks interim and final Court approval to use cash collateral from the filing date until June 30, 2025. Certain creditors claim a lien on the Debtor's cash, but the Debtor will generate post-petition accounts sufficient that a replacement lien on such accounts will adequately protect the senior creditors. All junior creditors are adequately protected by virtue of the protection afforded the senior creditors.

**II.        Jurisdiction.**

1.        The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (M).

2.        The Debtor's principal offices and principal place of business are located in Ogden, Utah, within the District of Utah, and, therefore, venue is proper in this District under 28 U.S.C. §§ 1408(1) and 1409.

3.        The bases for the relief requested herein are sections 105(a), 363, and 364 of Title 11 of the United States Code (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**III.        Statement of Relevant Facts.**

4.        The Debtor commenced this case on March 27, 2025.

5.        The Debtor is engaged in the business of providing outside receptionist services to customers in the United States and Canada. The Debtor generates approximately $480,000 of receivables monthly, and accepts payment on those receivables by processing a credit card on file either on a weekly or monthly basis.

6. The Debtor attempted to scale the company rapidly beginning in early 2024, over-hiring in anticipation of an influx of customers, which never materialized. Due the financial burdens occasioned by the over-hiring, the Debtor turned first to daily receivables lenders (the Merchant Cash Advance lenders, or **"MCAs,"** identified below), and later to family resources, in order to stay afloat.

7. The Debtor believes that the Small Business Administration (the **"SBA"**) arguably has a perfected security interest in all assets of the Debtor, including proceeds, and therefore has a perfected security interest in cash collateral. The Debtor believes the SBA's lien is the senior lien on its assets, perhaps only subject to a small possessory lien held by Stripe Servicing, Inc. (**"Stripe"**), which is discussed further below.

8. The Debtor owes the SBA approximately $645,000.00.

9. The Debtor believes that several other creditors, including the MCAs identified by an *, have perfected junior security interests in all assets of the Debtor, including proceeds, and therefore may also have a perfected security interest in cash collateral, including each of the following:

   a. Samson MCA LLC.*
   b. Northeast Bank.
   c. Elite Funding.*
   d. USA.
   e. Premium Merchant Funding 26, LLC.*
   f. CFT Clear Finance Technology Corp.*
   g. Daytona Funding Solutions.*

       h. Smart Business.*

       i. King's Funding Group.*

10. Certain other creditors may also be secured, but apparently at most elected to file UCC financing statements through generic intermediaries like CT Corporation, so the financing statements cannot be tied directly to a particular creditor. These creditors include:

       a. Capital Assist.*

       b. Highland Hills.*

       c. LevelEx Funding.*

       d. Novac Equities.*

       e. Newity.*

       f. OnDeck.*

       g. Funbox.*

       h. Finally.*

       i. Bill.*

11. Stripe is the Debtor's credit card processor. The vast majority of the Debtor's receivables are generated through credit card payments. Arguably, Stripe has possession of the receivables processed by credit card and may therefore step in front of the SBA in priority by virtue of its perfection by possession of the receivables, rather than perfection by recording. *See legal discussion below*. The Debtor owed Stripe approximately $9,404.34 on the petition date.

12. The Debtor owns equipment worth approximately $100,000.00.

13. The Debtor owns no real property.

14. The Debtor owns accounts receivable worth approximately $300,000.00, which regenerate monthly, and should increase in the coming months due to the cyclical nature of Debtor's business.

15. The Debtor owns intangible assets, including intellectual property and a customer list, which it values at approximately $200,000.00.

16. The Debtor believes that there is no equity in the debtor's assets beyond the amount of debts owed to Stripe and the SBA, and therefore the Debtor believes that the creditors listed in paragraphs 9.a.-9.i., and in 10.a.-10.i. above are not secured creditors in bankruptcy, and have no interest in the Debtor's cash collateral.

17. The Debtor believes that as long as it can generate accounts receivable monthly in the approximate amount of $480,000.00, it can continue to pay its employees, cover employment taxes, benefits, and insurance, pay rent, and generate a cash cushion to support anticipated plan payments to secured and unsecured creditors.

18. The Debtor expects to receive approximately $300,000.00 in collections from receivables shortly after April 1, 2025, most of which will be the proceeds of pre-petition accounts receivable.

19. Noting Stripe's and the SBA's interest in cash collateral, the Debtor has sought an opportunity to request their permission to use cash collateral as necessary through June 2025, but so far no agreement has been reached.

20. The Debtor has proposed to use cash collateral pursuant to the following budget, through June 30, 2023:

|  | April '25 | May '25 | Jun '25 |
|---|---|---|---|
| Cash Inflow | $480,000 | $480,000 | $480,000 |

| Cash Outflow | | | |
|---|---:|---:|---:|
| Programming Costs | $1,300 | $1,300 | $1,300 |
| Vendor Costs | $24,000 | $24,000 | $24,000 |
| Rent | $21,000 | $21,000 | $21,000 |
| Payroll and Related | $369,000 | $339,000 | $339,000 |
| Marketing Costs | $10,000 | $10,000 | $10,000 |
| Possible Mgmt. Comp. | $10,000 | $10,000 | $10,000 |
| Other | $7,000 | $7,000 | $7,000 |
| **Total** | **$443,300** | **$413,300** | **$413,300** |

21. The Debtor seeks permission to deviate from this budget by up to 15% in any category, so long as the total expenditures are not projected to negatively affect the overall projected margin for any month going forward.

22. In order to induce Stripe and the SBA to allow the Debtor to use cash collateral through June, the Debtor intends to offer Stripe and the SBA a replacement lien on its post-petition cash and receivables, to the extent Stripe and the SBA's cash collateral position diminishes between March 27, 2025 and the earlier of the date of plan confirmation or June 30, 2025. A small monthly adequate protection payment may also be possible, perhaps paid only to Stripe in April, and only to the SBA in May and June.

23. The Debtor's business is highly dependent upon the continued employment of current staff. The Debtor has obligations to the employee health insurer that must be paid next week, and cancellation of the Debtor's health insurance or interruption in its ability to pay employees would present an imminent threat to the business's ability to maintain its workforce and continue as a going concern. Of the amounts identified as necessary expenses in April, the following are imperative through interim approval, to avoid immediate collapse of the Debtor:

    a. Insurances (workers' comp., property, professional liability): $5,000

    b. Payroll (and related medical, dental, and vision): $164,000

    c. Twilio (phone bill): $10,000

    d. Other monthly bills: $6,000

    e. **Total: $185,000.00**

IV. **Legal Discussion.**

A. **Use of Cash Collateral – Bankruptcy Code Section 363(c)(1)**

Section 363(c)(2) of the Bankruptcy Code provides that:

> (2) The trustee may not use, sell, or lease cash collateral under paragraph (1) of this subsection unless—
>
> > (A) each entity that has an interest in such cash collateral consents; or
> >
> > (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section.

Section 363(e), in turn, provides that:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale, or lease as is necessary to provide adequate protection of such interest.

"Adequate protection" is defined in section 361 to include periodic cash payments, additional or replacement liens, or granting the secured party the "indubitable equivalent" of such secured party's existing interest. 11 U.S.C. § 361(1)-(3).

    In the present case, the Debtor intends to continue to operate the business and generate post-petition accounts receivable. The Debtor is prepared to offer a replacement lien in post-petition accounts, in order to adequately protect creditors whose secured positions are otherwise jeopardized by the Debtor's ongoing use of the cash contained in its accounts receivable.

**B. Priority as Between the SBA and Stripe.**

A party can perfect a security interest in a deposit account by maintaining control over the account. Utah Code 70A-9a-314(1). A party that perfects its security interest by taking control of the account has priority over a party that perfects its security interest only by filing. Utah Code 70A-9-327(1). Stripe, as the Debtor's credit card processor, has control over the funds generated when the Debtor charges its customers' credit cards. As such, Stripe likely has the senior security interest in the Debtor's credit card receipt account, even though it did not file a UCC financing statement until some time after the SBA filed its financing statement. If the Debtor is required to make adequate protection payments, the Debtor proposes to pay $9,404.34 to Stripe in an April adequate protection payment, and $9,000.00 to the SBA in May and June, as adequate protection payments.

**V.    Conclusion**.

For the foregoing reasons, Jill's Office, LLC requests interim and final approval of its use of cash collateral during the months of April, May, and June 2025.

DATED this 29th day of March, 2025.

                WORKMAN NYDEGGER

                By: /s/ *Ted Cundick*
                     T. Edward Cundick
                     Counsel to Jill's Office, LLC

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **MOTION FOR INTERIM AND FINAL APPROVAL TO USE CASH COLLATERAL** was filed on March 29, 2025 using the Court's CM/ECF electronic filing system, which sent notice to the following CM/ECF users:

**United States Trustee**　USTPRegion19.SK.ECF@usdoj.gov
**David W. Newman** tr on behalf of U.S. Trustee United States Trustee
david.w.newman@usdoj.gov,
James.Gee@usdoj.gov;Lindsey.Huston@usdoj.gov;Rinehart.Peshell@usdoj.gov;Rachelle.D.Hughes@usdoj.gov;Brittany.Dewitt@usdoj.gov

Additionally, the following secured creditors and parties from the Debtor's List of 20 Largest Unsecured Creditors were served on the same date, via email as follows:

Small Business Administration, Gygi, John S. john.gygi@sba.gov
Stripe Servicing, Inc., capital+support@stripe.com

Samson MCA LLC, astrid@bblawpllc.com
Capital Assist, mg@capital-assist.com
CFT Clear Finance Technology Group, payments@clear.com
Daytona Funding Solutions Corp., chris@thedaytonafunding.com
Elite Funding, collections@toptiercap.org
Barket Epstein, ltyras@barketepstein.com
Highland Hills, gabe@mendelberglaw.com
King's Funding Group LLC, Daniil@kingsfundinggroup.com
LevelEx Funding, admin@levelexfunding.com
Novac Equities, office@novacequities.com
Premium Merchant Funding 26, LLC, info@pmfus.com
Smart Business, muretta@tritonrecoveryllc.com
The Boyer Company, cameroncook@boyercompany.com
Newity, kbassette@newitymarket.com
OnDeck, scooley@enova.com
Funbox, payments@email.funbox.com
Finally, Charles.king@finally.com
Bill, Michael.lang@caine-weiner.com

　　　　　　　　　　　　　　　　　　　　　　　　/s/ T. Edward Cundick